IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGNIA (HUNT)

| | |
|---|---|
| IN RE:<br><br>DENNIS RAY JOHNSON, II, et al.<br><br>Debtor-in-Possession. | Bankruptcy No. 3:16-bk-30227<br><br>Jointly administered<br>Chapter 11 |

**MOTION FOR ENTRY OF AN ORDER: (I) APPROVING SALE OF
PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES;
(II) ASSUMING AND ASSIGNING LEASES AND EXECUTORY CONTRACTS;
AND (III) GRANTING RELATED RELIEF**

AND NOW, comes Thomas H. Fluharty, Chapter 11 Trustee ("Trustee") for the bankruptcy estates of Dennis Ray Johnson, II ("Johnson"), Appalachian Mining & Reclamation, LLC ("Appalachian"), Green Coal, LLC ("Green Coal"), Redbud Dock, LLC ("Redbud"), Producer's Land, LLC ("Land"), Producer's Coal, Inc. ("Coal"), Southern Marine Terminal, LLC ("SMT"), Southern Marine Services Limited Liability Company ("SMS"), DJWV1, LC ("DJWV1"), DJWV2, LLC ("DJWV2"), Elkview Reclamation & Processing, LLC ("Elkview"), Moussie Processing, LLC ("Moussie"), The Little Kentucky Elk, LLC ("LKE"), and Sabbatical, Inc. ("Sabbatical") (collectively, Johnson, Appalachian, Green Coal, Redbud, Land, SMT, SMS, DJWV1, DJWV2, Elkview, Moussie, LKE, and Sabbatical "Debtors"), all administratively consolidated at case number 3:16-bk-30227 ("Johnson Case") before the United States Bankruptcy Court for the Southern District of West Virginia ("Bankruptcy Court"), by and through counsel, and files this *Motion for Entry of an Order: (I) Approving Sale of Property Free and Clear of Liens and Encumbrances; (II) Assuming and Assigning Leases and Executory Contracts; and (III) Granting Related Relief* ("Motion"), and in support thereof, states as follows:

1

## DEBTORS

1. Johnson filed a voluntary petition under Chapter 11 of the Bankruptcy Code to commence the Johnson Case on May 9, 2016 (the "Petition Date").

2. By Order entered November 7, 2016, the Johnson Case and following cases were administratively consolidated: *Appalachian Mining and Reclamation, LLC*, Case No. 16-30400; *DJWV1, LLC*, Case No. 16-30249; *DJWV2, LLC*, Case No. 16-30062; *Elkveiw Reclamation and Processing, LLC*, Case No. 16-30250; *Green Coal, LLC*, Case No. 16-30399; *Joint Venture Development, LLC*, Case No. 16-30403; *Little Kentucky Elk, LLC*, 16-30251; *Moussie Processing, LLC*, Case No. 16-30248; *Producer's Coal, Inc.,* Case No. 16-30402; *Producer's Land, LLC*, Case No. 16-30401; *Redbud Dock, LLC*, Case No. 16-30398; *Southern Marine Services, LLC*, Case No. 16-30063; and *Southern Marine Terminal, LLC*, Case No. 16-30064. By Order entered March 24, 2017, Sabbatical was also administratively consolidated (collectively, with the Johnson Case, "Bankruptcy Cases").

## MOVANT

3. The Trustee was appointed Chapter 11 Trustee for the Debtors, all of which are consolidated and jointly administered in the Johnson Case. The Trustee brings this Motion as the trustee of the Debtors.

## LIENHOLDERS

4. The names and addresses of all creditors who assert secured claims and/or encumbrances against the Purchased Assets (as defined below) are as follows:

A. **Peoples Bank National Association**, c/o Bernstein-Burkley, P.C., 707 Grant St. Ste. 2200 Gulf Tower, Pittsburgh, PA 15219 – Redbud Dock, LLC security interest equipment and Producers Land – WV, LLC leasehold mortgage.

B. **Community Trust Bank**, c/o Janet Smith Holbrook, 611 Third Avenue, Huntington, WV 25701 – Redbud Dock, LLC security interest equipment.

C. **Prater Creek Coal Corporation**, c/o Jared M. Tully, Frost Brown Todd LLC, 500 Lee Street East, Suite 401, Charleston, WV 25301 – Southern Marine Terminal, LLC leasehold mortgage Ivel Wash Plant.

D. **Caterpillar Financial Services Corporation**, c/o Brandy M. Rapp, Whiteford, Taylor & Preston, LLP, 114 Market Street, Suite 210, Roanoke, VA 24011.

E. **West Virginia State Tax Department**, PO Box 766, Charleston, WV 25323-0766.

F. **MARCO Concrete Lifting, Inc.**, PO Box 1052, 1316 Porter Road, Cattletsburg, KY 41129.

G. **First Surety Corporation**, 179 Summers Street, Suite 307, Charleston, WV 25301.

## EXECUTORY CONTRACTS AND LEASES

5. The names and addresses of all entities and individuals who are counterparties to executory contracts or unexpired leases with the Debtors are as follows:

| | |
|---|---|
| Agee, Michelle Radwan | 4207 Boone's Grove Way, Louisville, KY 40299-7407 |
| Goble, Sharon K. | P.O. Box 107, Ivel, KY 41642 |
| Hammond, Kristi Goble | P.O. Box 107, Ivel, KY 41642 |
| Hicks, Loretta | P.O. Box 123, Ivel, KY 41642 |
| Jefferson, Betty Jean | 335 Koser Road, Lititz, PA 17543 |
| Keeton, John | 725 Bailey Lane, Winchester, KY 40391 |
| Martin, John | 1110 Tuscarawas Ave., New Philadelphia, OH 44663 |
| Martin, Renee | 37930 Westwood Circle Apt. 206, Westland, MI 48185 |
| Radwan, Angela | 1011 Vista Springs Way, Louisville, KY 40291 |
| Radwan, Patty | 6048 Sunnyslope, Naples, FL 34119 |
| Ratliff, Linda | 1517 Versailles Road Apt A, Lexington, KY 40503 |
| Ratliff, Stacey Goble | P.O. Box 171, Ivel, KY 41642 |
| Stratton, Anna B. | 119 Vine St., Pikeville, KY 41501 |
| Stratton, Lloyd Kelly | 24 Cedar Heights, Pikeville, KY 41501 |
| Stratton, Wendell David c/o Kristina Stratton | P.O. Box 109, Ivel, KY 41501 |
| Waun, Lorraine | 235 Idle Hour Drive, Lexington, KY 40502 |
| Welch, Annice Lee | P.O. Box 110, Ivel, KY 41642 |
| CSX Transportation RE | 6737 Southpoint Drives Jacksonville, FL 32216 |

| | |
|---|---|
| Edwin Vinson, Z Taylor Vinson and P&K Mines, LLC | c/o Richard Bolen, Esq., Dinsmore & Shohl LLP, 611 Third Avenue, Huntington, WV 25701 |
| DB Coal Mining, LLC | c/o Jim Lewis, 901 S. Second St., Dodge City, KS 67801 |
| Kansas Coal, LLC | c/o Jim Lewis, 901 S. Second St., Dodge City, KS 67801 |
| DB Land, LLC | c/o Jim Lewis, 901 S. Second St., Dodge City, KS 67801 |
| Peoples Bank National Association | c/o Bernstein-Burkley, P.C., 707 Grant St. Ste. 2200 Gulf Tower, Pittsburgh, PA 15219 |
| Carbon Partners, Inc. | 8880 Cedar Springs Lane, Suite 105, Knoxville, TN 37923. |
| Arch Coal Terminal, Inc. | C T Corporation System<br>306 W Main St<br>Suite 512<br>Frankfort, KY 40601 |

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1134. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (K), (N) and (O). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7. Sections 105(a) and 363 of the Bankruptcy Code and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") govern the relief requested in this Motion.

## FACTUAL BACKGROUND

8. The Debtors were each part of an operating coal enterprise under the control of Johnson.

9. In additional to being affiliated with each of the Debtors, it is believed that Johnson is also the sole member of Producer's Land-WV, LLC ("PLWV"). Though PLWV is

4

not in bankruptcy, the Trustee controls it by virtue of his status as receiver of PLWV and Trustee of the Johnson bankruptcy estate.

10. Johnson and Mark Pinson ("Pinson") also each hold a 50% membership interest in J.V. Energy Assets, LLC ("JVEA") (PLWV and JVEA, "Seller Companies") (the Trustee, the Seller Companies, and Pinson are hereinafter referred to, individually, as "Seller" and collectively as "Sellers").

11. Though JVEW is not in bankruptcy, the Trustee controls 50% of JVEA by virtue of his status as Trustee of the Johnson bankruptcy estate.

12. Johnson, Pinson, the Debtors and the Seller Companies have been engaged in certain aspects of the coal business including, but not limited to, mining, processing, trucking, storing, loading, buying and selling coal and coal products and/or the ownership and/or leasing of assets associated with such coal mining and selling operations.

13. As a result of the commencement of the Bankruptcy Cases, the Sellers have determined that it is in each of their respective best interests to pursue a sale of their assets.

14. To that end, the Sellers and Stella Natural Resources, Inc. ("Buyer") have entered into that certain *Asset Purchase Agreement* ("APA"), through which the Trustee, on behalf of the Sellers, seek court approval to sell the Purchased Assets[1] to the Buyer.

15. Buyer has paid to the Trustee the Earnest Money Deposit in the amount set forth in the APA.

16. A true and correct copy of the APA is attached hereto, made part hereof, and marked Exhibit "A".

---

1. Capitalized terms not otherwise defined herein shall have the same definitions as ascribed to them in the Agreement.

17. In order to further secure, rehabilitate, and manage certain of the Purchased Assets to allow them to return to production and working order, the Trustee and the Buyer have entered into, subject to the approval of the Bankruptcy Court, a *Management and Operating Agreement* ("Management Agreement") with the Buyer.

18. A true and correct copy of the Management Agreement is attached to the APA as Exhibit B.

19. A separate motion for approval of the Management Agreement will be filed with the Court.

## SALE OF THE PURCHASED ASSETS

20. The Trustee is seeking the authorization, pursuant to Sections 105 and 363 of the Bankruptcy Code to sell the Purchased Assets, except for the equipment securing Caterpillar Financial, free and clear of all liens, claims, and encumbrances of any nature, to the Buyer. The equipment securing Caterpillar Financial, as more specifically set forth in the APA, shall be sold subject to the liens of Caterpillar Financial. In the event that Buyer and Caterpillar Financial are unable to agree to terms for refinancing the secured claim of Caterpillar in whole or in part, the Trustee and Buyer agree to surrender the equipment to Caterpillar.

21. Section 363(b) authorizes the Trustee, after notice and a hearing, to use, sell or lease, other than in the ordinary course of business, property of the estate. 11 U.S.C. § 363(b).

**A. The Sale Satisfies Section 363(f) of the Bankruptcy Code**.

22. Section 363(f) authorizes the Trustee to sell property under Sections 363(b) or (c) free and clear of any interest in such property of an entity other than the estate only if:

> i. Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

    ii. Such entity consents;

    iii. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

    iv. Such interest is in a bona fide dispute; or

    v. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f).

23. First and foremost, in exchange for disbursing the proceeds from the sale of the Purchased Assets to the secured creditors as set forth *infra* and on the proposed Sale Order, the Trustee has obtained the consent of those secured creditors to sell the Purchased Assets. Thus, Trustee submits that the sale satisfies Section 363(f)(1) of the Bankruptcy Code.

24. In addition, any holder of a security interest in the Purchased Assets will be served with a copy of the Motion and will be given an opportunity to object. To the extent that they do not object to the Motion, they should be deemed to have consented to the proposed sale under Section 363(f)(2) of the Bankruptcy Code. *Future Source, LLC v. Reuters, Ltd.*, 312 F.3d 281 (7th Cir. 2002), *cert denied*, 538 U.S. 962 (2003) (holding that interest holder's failure to object to sale constitutes consent for purposes of Bankruptcy Code § 363(f)(2), if there was adequate notice); *In re Elliot*, 94 B.R. 343 (E.D. Pa. 1988) (holding same).

25. Moreover, pursuant to section 363(f)(5) of the Bankruptcy Code, a free and clear sale is permissible when the interest holders can otherwise be compelled, in a legal or equitable proceeding, to accept a money satisfaction of their interests. *See In re Gulf States Steel*, 285 B.R. 497, 508-509 (Bank. N.D. Ala. 2002) (permitting sale free and clear of a steel mill under section 363(f)(5) over objections where each of the liens or interest could be compelled to accept a

money satisfaction in a cram down plan in Chapter 11); *see also In re P.K.R. Convalescent Centers, Inc.*, 189 B.R. 90 (Bankr. E.D. Va. 1995) (allowing the sale of nursing home assets under § 363(f)(5) over objection where interest was reducible to a claim and subject to a hypothetical money satisfaction). Section 363(f)(5) does not require that the sale price for the property must exceed the value of the interests, but rather, only that the mechanism exists to address extinguishing the lien or interest without paying such interest in full. *See Gulf States*, 285 B.R. at 508.

26. Accordingly, the Trustee believes that the sale of the Purchased Assets pursuant to the APA satisfies the mandates to secure a free and clear sale under section 363(f) of the Bankruptcy Code, to the extent the Purchased Assets are owned by a bankruptcy debtors.

**B. The Sale is in the Best Interests of the Debtors and their Estates.**

27. The Trustee, in a sound exercise of his business judgment and on behalf of the Sellers, believes that it is in the best interest of the Debtors' estates and the creditors thereof, to approve the sale of the Purchased Assets to the Buyer while inviting higher and better offers at the time of the hearing on the Motion and to approve the Trustee's proposed disbursement of sale proceeds set forth herein.

28. As set forth above, the Trustee also believes that the sale of the Purchased Assets can be free and clear of any interest. The purchase price for the Purchased Assets is $4,201,330.00. Further, Buyer agrees to pay Prater Creek Coal, Inc. the sum of fifty cents (0.50) per raw short ton (2,000 lbs) of coal processed for outbound FOB delivery from Ivel Prep Plant commencing immediately when Buyer reopens and commences operations at the Ivel Prep Plant and continuing thereafter, subject to a maximum amount of Four Hundred Thousand Dollars ($400,000). Buyer shall also pay permit assumption costs, pursuant to terms of the APA (total of

$1,636,210). Buyer shall also cure leases and contracts as set forth in the APA (total of $260,085).

29.  The Trustee has identified liens of record as listed in Paragraph 4 above, against the Purchased Assets.

30.  As such, in order to obtain the consent of each lienholder to the sale of the Purchased Assets and a covenant to release any lien against the Purchased Assets at closing, the Trustee has agreed that the proceeds from the sale of the Purchased Assets, as more specifically described below, shall be allocated and disbursed to each secured creditor at closing as set forth in the following table:

|  | Secured Creditor to be Paid | Unsecured Creditors to be Paid | Amounts to Trustee | Amounts to (Payee Party) |
|---|---|---|---|---|
| **Southern Marine Terminal Assets** |  |  |  |  |
| Ivel Prep Plant & Associated Equipment | Prater Creek Coal Company |  | 825,000 | Up to $400,000 commencing from operations (see APA 3.1) (Prater Creek Coal Company, Inc.) |
| Permit assumption (Cost @25% Bonded)* | Indemnity National (full release) |  |  | 963,000 (KY DNR) |
| Carbon Partners right of first refusal |  | Unsecured creditors of Southern Marine Terminal | 35,000 |  |
|  |  |  |  |  |
| **Logan Mine & Associated Assets** |  |  |  |  |
| Mine mineral release & development | Peoples Bank |  | 2,500,000 |  |
| Underground equipment | Community Trust Bank |  | 201,330 |  |
| Permit assumption (Cost @25% Bonded)* |  |  |  | 38,000 (WV DEP) |
|  |  |  |  |  |
| **Stonecoal & Associated Assets** |  |  |  |  |

9

| | | | | |
|---|---|---|---|---|
| Mine development, equipment, and power centers | Peoples Bank | | 300,000 | |
| permit assumption* | First Surety (full release) | | | 635,210 (WV DEP) |
| | | | | |
| **Redbud Assets** | | | | |
| 980G and 315 | Peoples Bank | | 40,000 | |
| Warehouse equipment & rolling stock | Peoples Bank | | 300,000 | |
| | | | | |
| **Producers Land Assets** | | | | |
| Misc. Equipment & Rolling Stock (Schedule "B") | Peoples Bank / Community Trust Bank | | Included in amounts above | |
| | | | | |
| **TOTALS** | | | 4,201,330 | $1,636,210 (permit assumption) |
| | | | | $400,000 (Ivel/Prater Creek Payments) |
| **Creditor Pay-offs From Amounts to Trustee** | | | | |
| Secured | | | | 4,166,330 [minus $450,000 for trustee commission] |
| | | | | |
| Carve-out for Chapter 11 Trustee Commission, attorney fees, | | | | $450,000 (To come from amount allocated to Peoples Bank for Logan Mine assets) |
| | | | | |

31. Conditioned upon the foregoing distributions, the Trustee has the consent of the lienholders to consummate the sale under Section 363(f) of the Bankruptcy Code and convey marketable title to the Purchased Assets to the Buyer. In the event the distributions provided above are not made to the lienholders at Closing, then Peoples Bank does not consent to the Trustee Reserve being paid to the Trustee.

32. Conditioned upon the distribution of funds as provided above, Peoples Bank agrees to carve-out the sum of $450,000 to pay administrative expenses and applicable

commission and distributions to the various estates ("Peoples Bank carve-out"). The Peoples Bank carve-out shall be distributed to the Trustee and allocated to the Debtor estates pro-rata based upon sale proceeds distributed to the secured creditors of each Debtor estate. Accordingly, Southern Marine Terminal, LLC, Producers Land, LLC, Producers Land – WV, LLC (Receivership), and Redbud Dock, LLC shall receive distributions from the Peoples Bank carve-out for payment of administrative expenses and applicable commissions.

33. The sale is conditioned upon, *inter alia*, this Court entering a final, non-appealable order approving the sale ("Sale Order"), satisfactory to the Sellers and the Buyer. All conditions of the sale are set forth in detail in the APA.

34. The Trustee believes that the offer to purchase the Purchased Assets by the Buyer is the highest and best offer.

35. It is the Trustee's intent that the terms and conditions of the sale, as set forth in this Motion, are and shall be consistent with the APA.

36. The sale of the Purchased Assets, **TIME BEING OF THE ESSENCE**, shall be a sale in "AS IS, WHERE IS" condition, without representations or warranties of any kind whatsoever, except as may be provided for in the APA, and the participation of the Buyer in the sale process shall constitute an agreement and representation that the Buyer has inspected the Purchased Assets and is purchasing the Purchased Assets solely on the basis of such inspections, and not as a result of any representation of any kind whatsoever by the Trustee, the Sellers, or any agents or representative thereof, except as otherwise set forth herein.

37. The Closing on the sale of the Purchased Assets shall take place within thirty (30) days from the entry of an order by the Bankruptcy Court approving the sale of the Purchased Assets to the Buyer.

38. **ALL PARTIES NAMED IN PARAGRAPHS 4 AND 5 MAY HOLD LIENS, CLAIMS OR ENCUMBRANCES AGAINST THE PROPERTY. ALL SUCH PARTIES, AND ALL PARTIES RECEIVING NOTICE OF THE PROPOSED SALE, SHALL TAKE NOTICE THAT THE SALE IS TO BE FREE AND CLEAR OF ANY LIENS, CLAIMS OR ENCUMBRANCES, INCLUDING BUT NOT LIMITED TO ANY LIEN, CLAIM, ENCUMBRANCE OR INTEREST ARISING OUT OF ANY CLAIM, JUDGMENT, CAUSE OF ACTION, OR OTHER RIGHT TO PAYMENT, WHETHER REDUCED TO JUDGMENT, LIQUIDATED, UNLIQUIDATED, FIXED, CONTINGENT, MATURED, UNMATURED, DISPUTED, UNDISPUTED, LEGAL, EQUITABLE, SECURED OR UNSECURED. ALL SUCH PARTIES HAVING ANY INTEREST OR CLAIM WHATSOEVER AGAINST THE PURCHASED ASSETS SHALL TAKE NOTICE THAT THE SUCH INTEREST OR CLAIM SHALL BE DIVESTED BY THIS SALE TO THE EXTENT IT RELATES TO THE PURCHASED ASSETS.**

39. The identification of any party herein as a lien holder and/or interest holder, including but not limited to being scheduled as the holder of a lien, statutory, judicial, or consensual, is without prejudice to the rights of the Trustee and/or any party in interest to challenge the validity, extent, and/or priority thereof, and/or to challenge the validity of the debt, including but not limited to the amount alleged. Further, distributions of sale proceeds to identified lien holders and/or interest holders shall not be a release of any claims or causes of action that the Trustee has against such identified lien or interest holder and the Trustee reserves all rights thereto.

### C. **Finding of Good Faith pursuant to Section 363(m)**.

40. Consistent with the APA, the Trustee seeks a finding with respect to the "good faith" of the Buyer in furtherance of Section 363(m) of the Bankruptcy Code, which provides an enforceable, safe harbor provision for purchasers of property when the purchase is found to be in "good faith."

41. The Trustee believes that the Buyer is a good faith purchaser. The negotiations between the Sellers and the Buyer have been, at all times, arms' length and in good faith. The Buyer has no connection to the Sellers or the Debtors, is not an insider of the Sellers or the Debtors, and has no affiliation to the Sellers or the Debtors.

42. Additionally, the sale process will provide for an open and fair auction of the Purchased Assets which will further ensure the arms' length and good faith nature of this sale by encouraging competitive bidding.

43. In the event the Closing does not occur due to a topping bid, the Buyer shall be reimbursed by the Trustee from Johnson Case sale proceeds for amount expended by Buyer required to make the Purchased Assets operational, as more specifically set forth in the APA and Management Agreement, and a break-up fee in the amount of One Hundred Thousand Dollars ($100,000).

44. In the event the Closing does not occur due to any reason resulting in the termination of the APA, the Buyer shall be entitled to a priority administrative claim for amounts expended by Buyer, secured by a priority lien on Debtor's property, as more specifically set forth in the Management Agreement.

45. The Trustee believes, in an exercise of his sound business judgment that this Court will be able to make a determination that the sale was in "good faith," complied with the

applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, generated the highest and best offer, and should receive the protections of Section 363(m).

46. The Trustee believes that the proposed sale is fair and reasonable, and acceptance and approval of the same is in the best interests of the Debtors' estates.

**ASSUMPTION AND ASSIGNMENT OF**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

47. Pursuant to Sections 365(a) and 365(f)(2) of the Bankruptcy Code, the debtor-in-possession, subject to this Court's approval, may assume and assign any executory contract or unexpired lease of the debtor. *See* 11 U.S.C. §365(a), (f)(2).

48. Section 365 permits a debtor to assume executory contracts upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. *See NLRB v. Bildisco &Bildisco*, 465 U.S. 513, 523 (1984).

49. The Trustee, on behalf of the Debtors, intends to assume and assign to the Buyer the executory contracts and unexpired leases (as amended and collectively, the "Assumed and Assigned Contracts"), as more specifically set forth in the APA.

50. In connection to the Assumed and Assigned Contracts, the APA also identifies the amount the Trustee believes is necessary to be paid to cure any existing default in accordance with Sections 365(b) and 365(f)(2) of the Bankruptcy Code (the "Cure"); provided, however, that the presence of any contract or lease on the APA does not constitute an admission that such contract or lease is an executory contract or unexpired lease.

51. To the extent a counterparty to an Assumed and Assigned Contract (each, a "Contract Counterparty") disputes the Cure amount set forth in the APA, or otherwise objects to the assumption and assignment of any Assumed and Assigned Contract, the Contract

Counterparty must file and serve, in accordance with the applicable rules, a written objection by the deadline to object to the instant Motion.

52. Any objection to the proposed Cure, and any objection to the assumption and assignment of any Assumed and Assigned Contract to the Buyer, is deemed waived and forever barred if not filed on or before the deadline to object or otherwise respond to the Motion, including any objection (i) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults against the Debtors or their estate, (ii) asserting that the assignee of such contract or lease has not provided adequate assurances of future performance, and (iii) asserting that the assignment is subject to any anti-alienation provision or other restriction on assignment.

53. Only in the event the Court approves the sale of the Purchased Assets to an individual or entity other than the Buyer, Contract Counterparties shall have no more than fourteen (14) days from the date of service of the Sale Order to object to the assumption and assignment of any executory contract or unexpired lease to the purchaser of the Purchased Assets that is not the Buyer. The provisions of this Paragraph are effective only if the purchaser of the Purchased Assets is an individual or entity other than the Buyer. Otherwise, all objections to the assumption and assignment of the Assumed and Assigned Contracts must comply with Paragraph 51.

54. The assumption and assignment of the Assumed and Assigned Contracts will be an integral part of the sale contemplated in the APA. The ability of the Trustee to assume and assign such executory contracts and unexpired leases will serve, at the very least, to increase competitive bidding.

55. Further, the Trustee believes that, unless the Assumed and Assigned Contracts are assumed and assigned to the Buyer, the Buyer will be unwilling to consummate this transaction. In light of this and after due consideration, the Trustee has determined that the Assumed and Assigned Contracts provide a significant benefit to the Debtors and their estate and, therefore, believes in his business judgment that the assumption and assignment of the Assumed and Assigned Contracts is appropriate and is in the best interest of the Debtors, their creditors and their bankruptcy estates.

56. Accordingly, the Trustee respectfully requests that the Court approve any proposed assumption and assignment of the Assumed and Assigned Contracts.

## Waiver of Stay Pursuant to Bankruptcy Rules 6004(h) and 6006(d)

57. The Buyer and the Sellers seek to close on the sale of the Purchased Assets as soon as all of the conditions are met in the APA. As such, the Trustee seeks to waive the stay provided in Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure and requests that he, on behalf of the Sellers, be authorized and empowered to close the sale of the Purchased Assets immediately upon entry of this Court's Order approving the sale.

WHEREFORE, the Trustee respectfully requests that this Honorable Court enter an appropriate order approving the APA and the sale of the Purchased Assets to the Buyer pursuant to the APA, finding the Buyer is a "good faith" buyer, granting the protections of Section 363(m) upon closing of the Sale, authorizing the assumption and assignment of the Assumed and Assigned Contracts, waiving the stay imposed by Bankruptcy Rule 6004(h) and providing such other relief as this Court deems just and proper.

                                              Thomas H. Fluharty, Chapter 11 Trustee
                                              By Counsel,

<u>/s/ Joe M. Supple</u>
Supple Law Office PLLC
801 Viand Street
Point Pleasant, WV 25550
304.675.6249
joe.supple@supplelaw.net